IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STAKE CENTER LOCATING, INC., a Utah corporation,<br><br>        Plaintiff,<br><br>v.<br><br>LOGIX COMMUNICATIONS, L.P., a Texas limited partnership,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br>Case No. 2:13-CV-1090 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on cross motions for summary judgment. Plaintiff Stake Center Locating, Inc. ("SCL") seeks summary judgment on its claim for breach of contract, on Defendant Logix Communications, L.P.'s ("Logix") affirmative defenses of mistake and unconscionability, and on Logix's counterclaim for breach of contract. Logix opposes SCL's Motion, except as it relates to its affirmative defense of unconscionability, and has filed its own Motion for Partial Summary Judgment on its counterclaim for breach of contract.

For the reasons discussed below, the Court will deny both parties' Motions with respect to their competing breach of contract claims. However, the Court will grant SCL's Motion with respect to Logix's affirmative defenses of mistake and unconscionability.

I.  BACKGROUND

Defendant Logix is a telecommunications company operating almost exclusively in Texas. Plaintiff SCL is a company that provides underground utility locating services. SCL contracts with companies to mark the ground above underground cables, pipes, and other utilities to prevent excavators from damaging the utilities while digging. In 2011, Logix and SCL

1

entered into a service agreement whereby SCL would perform locating services for Logix's fiberoptic cable network in the Dallas area.

The parties entered into the Service Agreement on May 2, 2011.[1] The Service Agreement provides that SCL "is to perform utility locating for [Logix] of their underground facilities in the Dallas, Texas area."[2] Under the Service Agreement, SCL received locate requests from One Call Center (hereinafter, "Texas 811"). Upon receiving the locate requests, SCL was to "evaluate each notification for potential conflicts with [Logix's] underground facilities and for the need to locate these facilities in the field."[3] When SCL determined that Logix's "facilities [were] in potential conflict with proposed excavation, [SCL] shall field locate in orange paint all of [Logix's] facilities with [Logix's] designation mark within 48 business hours of the initial notification."[4] "Each request received by [SCL] from [Texas 811] will be billed by [SCL] and paid for by [Logix]."[5]

SCL was to commence work under the contract beginning on May 9, 2011, continuing until October 9, 2011. Thereafter, the contract would automatically renew for a one year term unless Logix gave SCL a written termination notice.[6]

Section 3 of the Service Agreement provides, in pertinent part:

> At the beginning of the billing period, [SCL] shall provide a detailed invoice for the previous period's work to the customer representative for payment. [SCL] will mail the invoices to [Logix]. The terms of the invoices will be "net 30."

---

[1] Docket No. 34 Ex. 1.
[2] *Id.* § 1.
[3] *Id.*
[4] *Id.* § 5.2.
[5] *Id.* § 5.1.
[6] *Id.* § 2.

> Payment must be received within 30 days upon completion of the previous months billing report. Interest will accrue on any unpaid balance at 1.5% per month for all invoices past 30 days. In the event [Logix] does not tender payment within 30 days after receipt of the invoices, [SCL] may suspend services and immediately terminate this contract and pursue all remedies against [Logix] for a material breach of contract.[7]

Section 9 states: "[SCL] will track the address and request numbers of each notification that has been evaluated to be in conflict with [Logix's] underground facilities. [SCL] will provide a summary of this information with the monthly invoice."[8]

Section 8 provides: "Should [SCL] fail to perform the work on any part thereof in accordance with the terms of this contract, [Logix] must send a written warning notice to [SCL] via certified mail. [SCL] then will have a 30 calendar day cure period in which to reasonably improve its performance."[9]

Under Texas law, any party excavating deeper than 16 inches is required to report that excavation to Texas 811, which in turn was responsible for providing notice that the excavation could affect the underground utilities in a certain area near the excavation. In this case, Texas 811 provided notice of digs or potential digs that were close to Logix's cables. Logix would then send those notices to SCL and, based on those notices, SCL performed locating services.

Logix was invoiced by SCL for one locate in June 2011. Logix was then invoiced for two locates in August 2011. SCL did not provide Logix any other invoices until September 10, 2013, when it provided invoices for work performed from May 2012 through August 2013. In

---

[7] *Id.* § 3.
[8] *Id.* § 9.
[9] *Id.* § 8.

total, SCL invoiced Logix for over $1.2 million. Logix has not paid the amounts sought by those invoices. SCL and Logix both assert claims for breach of contract against the other.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[11] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[12]

## III. DISCUSSION

### A. BREACH OF CONTRACT CLAIMS

The parties bring competing breach of contract claims. SCL asserts that it performed work under the Service Agreement and Logix breached the agreement by failing to pay for the work SCL performed. Logix argues the Service Agreement required SCL to submit invoices every month and the failure to do so was a material breach of the Service Agreement, excusing its further performance. Both parties seek summary judgment on their respective claims.

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4)

---

[10] Fed. R. Civ. P. 56(a).

[11] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[12] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

damages."[13]  Both parties purport to agree that they must demonstrate that the breach was material.  "However, a party need not show that a breach is material to recover damages."[14]  Rather, "[a] party must show material breach to prevail on certain affirmative defenses, such as excuse."[15]

There is no dispute that the parties entered into a valid contract.  Both parties claim that they performed their obligations under the Service Agreement and that the other side did not, resulting in damages.  To resolve this issue, the Court must determine the parties' respective obligations under the Service Agreement.

### 1.  *Performance and Breach*

The Service Agreement provides that SCL "is to perform utility locating for [Logix] of their underground facilities in the Dallas, Texas area."[16]  SCL received locate requests from Texas 811 and, upon receipt of those locate requests, SCL was to "evaluate each notification for potential conflicts with [Logix's] underground facilities and for the need to locate these facilities in the field."[17]  When SCL determined that Logix's "facilities [were] in potential conflict with proposed excavation," the Service Agreement required SCL to "field locate in orange paint all of [Logix's] facilities with [Logix's] designation mark within 48 business hours of the initial

---

[13] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 391 (Utah 2001).

[14] *Tooele Assocs. Ltd. P'ship v. Tooele City*, 284 P.3d 709, 714 (Utah Ct. App. 2012).

[15] *Id.*

[16] Docket No. 34 Ex. 1, § 1.

[17] *Id.*

notification.[18]  "Each request received by [SCL] from [Texas 811 was to] be billed by [SCL] and paid for by [Logix]."[19]

Logix first argues that SCL's breach of contract claim fails because there is no evidence that SCL actually performed the locating services for which it seeks payment.  This argument is not supported by the evidence.  SCL has presented evidence that it did, in fact, perform the locating services at issue.  Both Chuck Schvaneveldt, SCL's CEO, and Anthony Belford, SCL's 30(b)(6) witness, provided sworn statements that SCL performed the work for which it seeks payment.[20]  Logix has provided no evidence to the contrary.  Rather, Terry Burnside, Logix's 30(b)(6) witness, testified that Logix had no evidence that SCL did not provide the locating services.[21]

Logix relies heavily upon the testimony of David Mosier, an SCL employee, who testified that SCL did not send out zero invoices, meaning that if SCL performed no work, no invoice was sent.[22]  While Mr. Mosier so testified, he did not testify that not sending an invoice meant that no work was done, only that if no work was done no invoice would be sent.  Logix's contention that this testimony supports its claim that there is not sufficient evidence that SCL performed the locating services reads too much into this statement.  In short, SCL has provided evidence that it performed the locating services for which it seeks payment and Logix has failed to present any evidence to the contrary.

---

[18] *Id.* § 5.2.

[19] *Id.* § 5.1.

[20] Docket No. 37 ¶¶ 3, 9–10; Docket No. 38 Ex. 1, at 215:5–9.

[21] Docket No. 38 Ex. 2, at 167:16–22, 169:15–22.

[22] Docket No. 34 Ex. 6, at 167:8–17.

Logix next argues that SCL was required to submit invoices on a monthly basis and its failure to do so constituted a material breach of the Service Agreement that excused Logix's further performance. SCL argues that the Service Agreement contained no such requirement and, even if it did, its failure to comply was not a material breach.

Section 3 of the Service Agreement provides, in pertinent part:

> At the beginning of the billing period, [SCL] shall provide a detailed invoice for the previous period's work to the customer representative for payment. [SCL] will mail the invoices to [Logix]. The terms of the invoices will be "net 30." Payment must be received within 30 days upon completion of the previous months billing report. Interest will accrue on any unpaid balance at 1.5% per month for all invoices past 30 days. In the event [Logix] does not tender payment within 30 days after receipt of the invoices, [SCL] may suspend services and immediately terminate this contract and pursue all remedies against [Logix] for a material breach of contract.[23]

Section 9 states: "[SCL] will track the address and request numbers of each notification that has been evaluated to be in conflict with [Logix's] underground facilities. [SCL] will provide a summary of this information with the monthly invoice."[24]

Though these provisions are less than clear, when read in combination, they demonstrate that SCL was required to submit invoices every month. The Service Agreement required SCL to submit a detailed invoice for the "previous period's work" at the beginning of the "billing period." Although the contract does not define "billing period," the rest of the Service Agreement speaks in terms of monthly reports and monthly invoices. The only logical conclusion is that the "beginning of the billing period" referred to by the Service Agreement is the beginning of the month following the month in which the work was completed.

---

[23] *Id.* § 3.
[24] *Id.* § 9.

SCL argues that the contract does not state anything about the timing of invoices. Rather, SCL argues, the Service Agreement only requires the invoices cover monthly intervals and SCL could not obtain payment until it submits an invoice. This interpretation, however, ignores the provision requiring SCL to submit invoices "[a]t the beginning of the billing period." SCL has pointed to nothing suggesting that the "billing period" lasted from May 2012 to September 10, 2013, when it eventually submitted several monthly invoices. Rather, the only logical reading of the contract is that SCL was required to submit invoices for the previous month's work at the beginning of the following month. SCL concedes that it was required to submit invoices that covered monthly intervals. The only way to interpret the contract as a whole, without rendering certain provisions meaningless, is to interpret the contract as requiring that an invoice be submitted every month. Indeed the parties' conduct reveals that this was their understanding of the contract.

Based upon this, the Court finds that SCL was required to submit invoices on a monthly basis. The undisputed evidence shows that SCL failed to do so and, therefore, breached Section 3 of the Service Agreement. The question becomes whether this breach was material. If SCL's breach was material, Logix's further performance would be excused.[25] If not material, Logix's performance would not be excused, though Logix could still be entitled to damages as a result of SCL's nonmaterial breach.[26]

---

[25] *Orlob v. Wasatch Med. Mgmt.*, 124 P.3d 269, 275 (Utah Ct. App. 2005) ("It is well-settled law that one party's breach excuses further performance by the non-breaching party if the breach is material.").

[26] *Tooele Assocs. Ltd. P'ship*, 284 P.3d at 714–15.

"What constitutes so serious a breach as to justify rescission is not easily reduced to precise statement, but certainly a failure of performance which defeats the very object of the contract or [is] of such prime importance that the contract would not have been made if default in that particular had been contemplated is a material failure."[27]

> A breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom. A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement.[28]

"The relevant question is not whether the breach goes to the heart of the provision breached, but whether it goes to the heart of the contract itself."[29] The following factors can assist a court in determining the "materiality" of a breach:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[30]

---

[27] *Polyglycoat Corp. v. Holcomb*, 591 P.2d 449, 451 (Utah 1979) (citation and internal quotation marks omitted).

[28] *Coalville City v. Lundgren*, 930 P.2d 1206, 1210 (Utah Ct. App. 1997) (citation and internal quotation marks omitted).

[29] *Cross v. Olsen*, 303 P.3d 1030, 1036 (Utah Ct. App. 2013).

[30] Restatement (Second) of Contracts § 241 (1981).

"Whether a breach of a contract constitutes a material breach is a question of fact."[31] "Therefore, the issue will ordinarily be resolved by the fact finder, and '[s]ummary judgment should be granted with great caution.'"[32]

Logix argues that the failure to provide invoices on a monthly basis was a material breach because, without such invoices, it was not aware of the type and volume of work being performed by SCL. Matt Asmus, Logix's CEO, has provided an affidavit in which he states that, had Logix received the required invoices, it would have been able to pursue alternative, less expensive ways to obtain locating services.[33] This statement is supported by the fact that Logix brought its locating services in-house after it received the invoices from SCL and paid significantly less per month than SCL was charging.

Logix's contention is premised on the argument that, without the invoices, it did not know and could not have determined the type and volume of work being conducted by SCL. SCL has presented evidence challenging this argument. That evidence shows that Texas 811 sent notifications to Logix every time a dig or potential dig was close to Logix's cables. Texas 811 charged Logix for those notifications and Logix paid the invoices sent by Texas 811, which stated the number of notifications sent.[34] Logix forwarded those notifications to SCL so that SCL could perform locating services in relation to those notifications, as required by the

---

[31] *Orlob*, 124 P.3d at 275.

[32] *Cross*, 303 P.3d at 1036 (quoting *Apache Tank Lines, Inc. v. Cheney*, 706 P.2d 614, 615 (Utah 1985)).

[33] Docket No. 34 Ex. 4 ¶ 13.

[34] *See* Docket No. 61 Ex. F.

contract.  Thus, SCL argues that Logix was aware or, through little effort, could have become aware of the work being performed by SCL.

Logix argues that the notifications sent from Texas 811 were forwarded to SCL automatically, without human involvement.  Logix appears to imply that this arrangement prevented it from fully knowing what SCL was doing.  Logix further argues that, without detailed invoices, it could not know exactly what work was being performed.  As above, these claims are challenged by SCL based on the notices sent to Logix by Texas 811.

Based upon this dispute, the Court finds that summary judgment is inappropriate.  The parties vigorously dispute what information Logix had available to it and whether it knew, or should have known, the work being performed by SCL without the submission of detailed invoices.  As set forth above, Logix contends that it did not know what work was being performed by SCL and, had it known, it would have pursued a less expensive alternative.  SCL, on the other hand, has provided information from which a jury could find that Logix either knew, or could have known, what work SCL was performing.  This evidence tends to rebut Logix's claim that the invoices were a material aspect of the contract.  Since materiality is a question of fact under Utah law, the Court finds that summary judgment is inappropriate in light of these disputes.

SCL makes two other arguments as to why Logix's breach of contract claim fails, neither of which supports the entry of summary judgment.  First, SCL argues that Logix cannot claim a breach because it never sent SCL a written warning.  Section 8 of the Service Agreement provides: "Should [SCL] fail to perform the work on any part thereof in accordance with the terms of this contract, [Logix] must send a written warning notice to [SCL] via certified mail.

[SCL] then will have a 30 calendar day cure period in which to reasonably improve its performance."[35]

As an initial matter, summary judgment on this point must be denied for substantially the same reasons set forth above. There is a dispute as to what information Logix had and when it discovered, or could have discovered, SCL's breach. Additionally, there is nothing to suggest that this provision is a condition precedent to suit. Thus, even if Logix failed to comply with this obligation, SCL has failed to show that this provision somehow bars Logix from asserting its counterclaim. The cases SCL relies on in its Reply brief are distinguishable for this reason.[36] Additionally, SCL did not include a claim that Logix violated this provision in either its Complaint or its Answer to Logix's Counterclaim. Thus, it is unclear whether this issue is even before the Court. Regardless, SCL is not entitled to judgment based upon this provision.

Finally, SCL argues that Logix's representative has admitted that it should pay SCL something, which is inconsistent with Logix's breach of contract claim. While it is true that Logix's representative did testify that SCL may be entitled to some amount for the work performed, SCL does not explain how this statement entitles it to summary judgment.

    *2.    Damages*

In addition to the arguments set forth above, SCL argues that Logix's breach of contract claim fails because Logix has failed to establish damages. SCL characterizes Logix's damages claim as being limited to attorney's fees, employee time, and a reduction in SCL's damages. As an initial matter, SCL mischaracterizes the types of damages Logix seeks. Logix damages

---

[35] Docket No. 34 Ex. 1, § 8.

[36] *See* Docket No. 64, at 12.

claims are not so limited as SCL suggests. Further, Logix could still recover nominal damages on its breach of contract claim.[37] Thus, SCL is not entitled to summary judgment on Logix's breach of contract claim on this ground.

B.     MISTAKE

SCL also seeks summary judgment on Logix's affirmative defense of mistake. "A mutual mistake of fact can provide the basis for equitable rescission or reformation of a contract even when the contract appears on its face to be a complete and binding integrated agreement."[38] "A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain."[39]

Logix asserts that the parties shared a mistaken belief that the Service Agreement was for low-volume locating services. While Logix has presented some evidence indicating that it held such a belief,[40] there is no evidence that SCL shared that belief. SCL's CEO has stated that, at the time the parties entered into the Service Agreement, SCL "knew it was possible that the amount of locating services SCL was required to provide for Logix could increase."[41] The only evidence Logix has presented in support of its position is an email exchange between

---

[37] *See Turtle Mgmt, Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 670 (Utah 1982) ("Nominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted from the breach or if the amount of damages has not been proven.").

[38] *Burningham v. Westgate Resorts, Ltd.*, 317 P.3d 445, 449 (Utah Ct. App. 2013) (citations and internal quotation marks omitted).

[39] *Id.* (citations and internal quotation marks omitted).

[40] *See* Docket No. 61 Ex. B ¶ 5 ("The rates ultimately set forth in the Service Agreement were negotiated and set for a low volume of locating services—not high volume locating services such as those reflected by SCL's May 2012 through August 2013 invoices—as was discussed and understood by both parties during negotiation of the Service Agreement.").

[41] Docket No. 37 ¶ 6.

representatives of SCL and Logix. In that exchange, Logix explained that it expected a low ticket count, but also explained that its network was growing.[42] Based upon this information, SCL provided a bid of $83.66 per ticket.[43] This price was ultimately reflected in the Service Agreement.

Rather than showing that SCL believed that the Service Agreement was only for low-volume locating service, this evidence shows that both parties understood that Logix's network was growing, which had the potential of increasing the volume of locating services performed by SCL. The only conclusion that can be reached is that the price for locating services contained in the Service Agreement reflected this understanding. Thus, there is no evidence of a mutual mistake and summary judgment in favor of SCL is appropriate. Moreover, the alleged mistake concerns future events, specifically the number of locates SCL would be required to conduct. Such a mistake as to future events, to the extent one existed, does not relieve the parties of their obligations.[44]

C.   UNCONSCIONABILITY

Logix does not oppose summary judgment on its affirmative defense of unconscionability. Therefore, summary judgment in favor of SCL is appropriate on this defense.

---

[42] Docket No. 61 Ex. L.

[43] *Id.*

[44] *Mooney v. GR & Assocs.*, 746 P.2d 1174, 1178 (Utah Ct. App. 1987) (quoting *Beals v. Tri-B Assocs.*, 644 P.2d 78, 80 (Colo. Ct. App. 1982)) ("'If the parties harbor only mistaken expectations as to the course of future events and their assumptions as to facts existing at the time of the contract are correct, recission is not proper.'").

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 34) is DENIED. It is further

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 36) is GRANTED IN PART AND DENIED IN PART as set forth above.

The Court will refer this matter to a Magistrate Judge to conduct a settlement conference.

DATED this 18th day of June, 2015.

BY THE COURT:

Ted Stewart
United States District Judge